UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| TOBBY STOLTZ, an individual, | Case No. 1:14-cv-00186-BLW |
| --- | --- |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| FRY FOODS, INC., an Ohio corporation, | |
| Defendant. | |

## INTRODUCTION

Before the Court are two motions filed by the parties. In a somewhat unusual motion, Plaintiff Tobby Stoltz asks this Court to stay this case so that he may finish litigating a substantively identical suit he brought against Defendant Fry Foods, Inc. in Oregon state court. *Pl.'s Motion to Stay*, dkt. 12. Fry Foods opposes this motion, in part because Fry Foods moved to dismiss Stoltz's complaint in this suit as time barred before Stoltz asked for a stay. *Def.'s Motion to Dismiss*, dkt. 6. For the following reasons, the Court will deny Stoltz' motion and grant Fry Foods' motion.

## BACKGROUND

Fry Foods hired Duane L. Bellows Construction, Inc. ("DLB Construction") to perform repair work at Fry Foods' Weiser, Idaho plant. *Compl.*, dkt. 12-1, ex. A, ¶8. On November 14, 2011, Stoltz, an employee of DLB Construction, was repairing a truss in

the attic of the plant when he fell approximately twenty feet through an area of unsupported sheetrock. *Id.* ¶¶8-9. Stoltz was serious injured in the fall. *Id.* ¶10.

On November 8, 2013, Stoltz filed suit against Fry Foods in Multnomah County Circuit Court. *Id.* ¶7. Fry Foods moved to dismiss Stoltz's Oregon suit on the grounds that Oregon courts did not have personal jurisdiction over Fry Foods. The Oregon trial court granted that motion and initially ordered the case transferred to Idaho. *Id.* at 7. However, after additional briefing, the Oregon trial court vacated its transfer order and dismissed the suit without prejudice. *Id.*; *Amended Order*, dkt. 14-4, ex. B.

In response, Stoltz did two things. First, he appealed the dismissal of his Oregon suit to the Oregon Court of Appeals. *Notice of Appeal*, dkt. 14-5, ex. C. That appeal is currently pending. Second, Stoltz filed a parallel suit to his Oregon suit in Idaho's Third Judicial District Court. *See Compl.*, dkt. 12-1, ex. A, ¶7. In his complaint, Stoltz alleged that Fry Foods negligently failed to maintain a safe working space for Stoltz, and that Fry Foods' negligence was the proximate cause of his injuries. *Id.* at 18-19. Stoltz also alleged that Fry Foods contracted with DLB Construction "to make the premises safe for DLB Construction employees to perform the repair work" at the Weiser plant, which Fry Foods allegedly breached. *Id.* at 20, ¶24. Finally, Stoltz alleged that Fry Foods failure to support the sheetrock was a construction defect.

Fry Foods removed Stoltz's Idaho complaint to this Court, and moved to dismiss the complaint. Dkts. 1, 6. According to Fry Foods, the statute of limitations for filing a personal injury action in Idaho is two years. Therefore, Fry Foods argues the time to file

a complaint based on the November 14, 2011, accident expired on or about November 15, 2013. Stoltz opposed Fry Foods' motion to dismiss and filed a motion to stay this suit pending resolution of his Oregon suit. Both motions are fully briefed and suitable for decision without oral argument.

## DISCUSSION

**1.     Motion to Stay**

Stoltz asks the Court to stay these proceedings pending resolution of his case in Oregon. Although Stoltz primarily asks for a stay pursuant to *Landis v. North American Co.*, 299 U.S. 248 (1936), he also suggests that some, but not all, of the factors enumerated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and its progeny support a stay. Stoltz argues, however, that, because he "does not ask for declination of jurisdiction or dismissal . . . , [he] is not required to make a showing of 'exceptional circumstances,'" which is a normal requirement for full-blown *Colorado River* abstention. *Pl.'s Stay Memo*, dkt. 12-1, at 10. This argument raises the question: Which standard, *Landis* or *Colorado River*, controls the resolution of Stoltz's motion to stay?[1]

---

[1] Stoltz also suggests that the Court borrow from *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), and its progeny, which concern staying a federal declaratory action pending the resolution of a related case in state court. The *Brillhart* factors, however, apply only in declaratory actions. *Scotts Co. LLC v. Seeds, Inc.*, 668 F.3d 1154, 1158 (9th Cir. 2012). "Claims that exist independent of the request for a declaration . . . are instead evaluated under the *Colorado River* doctrine." *Id.* (alteration, citation, and internal quotation marks omitted).

The question is not purely academic. "In abstention cases, discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367 (9th Cir. 1990) (internal quotation marks omitted). And while both *Landis* and *Colorado River* allow federal courts to stay a case out of concern for "wise judicial administration," *Colorado River*, 424 U.S. at 818; *Landis*, 299 U.S. at 254, the two doctrines are not interchangeable. In the typical *Landis* stay case, a federal court postpones resolution of the case pending some related proceeding. However, the related proceeding typically serves only to narrow the factual or legal issues for the federal court. In *Landis*, for example, the Court considered the propriety of a stay to allow the attorney general to litigate in a separate test case the constitutionality of an S.E.C. regulation. 299 U.S. at 250-51. Although that was the primary issue in all of the cases, the Court recognized that resolution of the test case "may not settle every question of fact and law" in the remaining cases. *Id.* at 256; *see also CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962) (upholding a stay because a related agency proceeding "provide[d] a means of developing comprehensive evidence bearing upon the highly technical tariff questions which [were] likely to arise in the district court case"). Furthermore, a *Landis* stay is generally of a limited duration. *See Landis*, 299 U.S. at 256 ("[T]he individual may be required to submit to delay not immoderate in extent . . . ."); *id.* at 255 (stating that a district court abuses its discretion by entering a "stay of indefinite duration in the absence of a pressing need"); *Belize Soc. Dev. Ltd v. Belize*, 668 F.3d 724, 730 (D.C. Cir. 2012)

("The stay at issue may be sufficiently indefinite as to require a finding of pressing need [under *Landis*], . . . but it is not so indefinite as to constitute the equivalent of a dismissal under the 'effectively out of court' doctrine.").

In contrast, a decision to refrain from hearing a case under *Colorado River* represents a complete abdication of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U.S. at 817. It is only where the parallel state case will dispose of "all or an essential part of the federal suit" that a stay is appropriate. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 10 n.11 (1983); *see id.* at 28 ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."); *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033-34 (9th Cir. 2005); *Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002) (reversing a stay "[b]ecause there [wa]s substantial doubt that a final determination in the [state] custody proceeding [would] resolve all of the issues in [the federal suit]"). Given the narrowness of the *Colorado River* doctrine, federal courts have insisted that the "relevant standard prescribed by [the] Court" be met. *Moses H. Cone*, 460 U.S. at 19; *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1158 (9th Cir. 2012) ("The federal district courts ordinarily must apply the test outlined in *Colorado River* . . . in determining whether to stay federal proceedings in favor of pending state court proceedings concerning the same subject matter.") (quoting *40235 Wash. St. Corp. v. Lusardi*, 976 F.2d 587, 588 (9th Cir. 1992)); *Travelers*, 914

F.2d at 1367 ("[T]he district court's discretion here must have been exercised within the 'exceptional circumstances' limits of the *Colorado River* doctrine.").

Here, Stoltz asks the Court to stay this case with the expectation that he will prevail on appeal and litigate his claims in the Oregon courts. Running throughout his argument is the assumption that there will be nothing more for this Court to do once a stay is entered. Furthermore, Stoltz does not suggest a timeframe in which he can reasonably expect the Oregon proceedings to conclude. Fry Foods, on the other hand, estimates that the appeal over the personal jurisdiction issue alone will take in excess of one year. This is precisely the situation that the *Colorado River* doctrine was designed to govern. *See Colorado River*, 424 U.S. at 817-18.

As mentioned above, Stoltz does not believe *Colorado River* applies because he is requesting a stay, not dismissal. The Supreme Court has expressly rejected Stoltz's argument "that the *Colorado River* test is somehow inapplicable" because a court is asked to stay the case "rather than dismissing the suit outright." *Moses H. Cone*. 460 U.S. at 27. In fact, the Ninth Circuit has expressed a preference for stays over dismissals, in case the state proceeding turns out not to resolve the federal litigation. *See Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989).

Curiously, Fry Foods also resists applying the *Colorado River* test. It argues that *Colorado River* is inapplicable because Stotlz's appeal in Oregon concerns only whether Oregon courts have personal jurisdiction over Fry Foods. Therefore, Fry Foods concludes, the Oregon case is not a parallel proceeding with this suit. This argument

misses the mark. While parallel proceedings are required under *Colorado River*, "exact parallelism" is not. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). This suit and Stotlz's Oregon suit are virtually identical. Substantively, they involve the same parties and claims arising out of the same incident at Fry Foods' Weiser plant. The only difference, as far as the Court can tell, is the presence of two non-mutual collateral issues—(1) the personal jurisdiction issue before the Oregon Court of Appeals and (2) the statute of limitations issue Fry Foods raised in this suit. The existence of these two collateral issues does not change the fact that Stoltz's two suits are "substantially similar." *Id.*

Moreover, the possibility that the Oregon Court of Appeals will affirm, in which case the Oregon courts will not resolve any of the substantive issues raised in the two suits, does not mean *Colorado River* should not be applied, as Fry Foods argues. Instead, any substantial doubt over whether the state suit will resolve the litigation in federal court is simply a factor that strongly counsels against the stay. *See Holder*, 305 F.3d at 868; *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). Therefore, the Court will apply the *Colorado River* test to Stoltz's motion.

    A.    **Application of *Colorado River*.**

Courts consider several nonexclusive factors under the *Colorado River* test to determine if exceptional circumstances exist to warrant a stay: (1) whether the state court first assumed jurisdiction over property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was

obtained by the concurrent forums; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; (7) whether exercising jurisdiction would promote forum shopping. *Holder*, 305 F.3d at 870. "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Travelers*, 914 F.2d at 1368 (quoting *Moses H. Cone*, 460 U.S. at 16).

Several of the factors are easily applied. The first factor is irrelevant because there is no property at issue. The second factor weighs against a stay. Stoltz admits that this Court "is not particularly inconvenient" to litigate in. *Pl.'s Stay Memo.*, dkt. 12-1, at 11. The fourth factor also weighs against a stay. Although Stoltz is correct that the Oregon courts first obtained subject matter jurisdiction, "priority should not be measured exclusively by which complaint was filed first." *Travelers*, 914 F.2d at 1370 (alteration omitted). Instead, priority should be measured "in terms of how much progress has been made in the two actions." *Id.* Here, the Oregon case has not progressed past the initial motion to dismiss. No discovery occurred. In contrast, the parties in this case have exchanged initial disclosures, and there is Fry Foods' motion to dismiss pending, which is fully briefed and ripe for a decision. Furthermore, neither party argues that the Oregon courts are inadequate to protect the parties' rights, the sixth factor.

The third and fifth factors are the most disputed. Stoltz argues that proceeding in this case will (1) require duplicative discovery; (2) raise complicated issues, such as workers' compensation, subrogation, and res judicata; and (3) cause undue hardship for Stoltz "in opposing dismissal in both courts at the same time." *Pl.'s Stay Memo.*, dkt. 12-1, at 8. Fry Foods counters that (1) there will not be duplicative discovery because there is no discovery scheduled while the Oregon appeal is pending, and any discovery in this case would be applicable in the Oregon suit, should it get that far; (2) it is doubtful that any complicated issues of law will arise, and, if they do, that is hardly a good reason for the Court to shy away; and (3) any hardship Stoltz may face is self-imposed.

The Court agrees with Fry Foods. Discovery, if either case reaches that point, would not be duplicative because it could be used in either proceeding. The suits are, after all, identical on the merits. Although state law controls, this suit does not raise any novel issues, but instead concerns routine issues that this Court has dealt with numerous times before. Moreover, given that Idaho law controls the issue of Fry Foods' liability, as Stoltz recognizes,[2] this Court is likely more familiar than the Oregon courts with the applicable body of law. Additionally, the Court agrees that requiring Stoltz to move forward in this suit is not unduly burdensome. *See Travelers*, 914 F.2d at 1370 ("[T]he

---

[2] Throughout his briefing, Stoltz suggests that Idaho tort law controls whether Fry Foods committed a tort or breached the contract. However, he also suggests that Oregon workers' compensation and subrogation law may become relevant.

mere existence of a case on the state docket in no way . . . imposes a burden on the defendant which would justify abstention.") (internal quotation mark omitted).

Finally, Fry Foods argues that the seventh factor, inappropriate forum shopping, goes against a stay. The Ninth Circuit has "held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers*, 914 F.2d at 1371. According to Fry Foods, Stoltz engaged in inappropriate forum shopping because he filed this suit only after the Oregon trial court dismissed his Oregon suit. However, in *Attwood*, the Ninth Circuit held that a district court abused its discretion by dismissing rather than staying a federal suit under *Colorado River* saying, "unlike a dismissal, a stay avoids the risk that the federal plaintiff will be time-barred from reinstating the federal suit." *Id.* at 244. The court rejected the idea that the plaintiff's good-faith effort to ensure a forum was available to adjudicate her rights was inappropriate forum shopping. *Id.* at 245 ("Where there is concurrent jurisdiction, however, it is permissible for a plaintiff to file parallel state and federal actions simultaneously."). Like Attwood, Stoltz filed this suit in an attempt to preserve some forum to adjudicate his suit on the merits. Although his preference is for Oregon, Stoltz did not act inappropriately by filing this parallel suit. Thus, the seventh factor weighs in favor of a stay.

In the end, the Court concludes that a stay is not warranted in this case. The Oregon suit has not progressed far enough to provide any advantage to the Court or the

litigants.  There do not appear to be any novel issues of state law.  Absent some advantage from deferring to the Oregon suit, the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction" should be followed.  *Colorado River*, 424 U.S. at 817.

**2.      Motion to Dismiss**

Fry Foods moves to dismiss Stoltz's complaint under Federal Rule of Civil Proceedure 12(b)(6) on the grounds that it is barred by the statute of limitations.  "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint.  [A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal citations and quotation marks omitted).

**A.      Plaintiff does not have a claim for breach of contract.**

The parties' first point of contention is whether Stoltz pleaded a claim for breach of contract.  If Stoltz has, Idaho's four-year statute of limitations applies, I.C. § 5-217, and Stoltz's contract claim was timely filed.  If Stoltz's causes of action are for tort only then Idaho's two-year statute of limitations for personal injuries applies, I.C. § 5-219(4), and Stoltz's complaint was untimely (unless the statute of limitations can be tolled).

According to Stoltz, Fry Foods agreed as a term of the verbal contract with DLB Construction to "make the premises safe for DLB Construction employees to perform the

repair work." *Pl.'s Compl.*, dkt. 12-1, ¶24. Stoltz argues that Fry Foods breached this provision of the contract. Regardless of the label applied, Fry Foods counters, Stoltz's contract claim actually sounds in tort. Fry Foods is correct.

The source of the duty that Fry Foods allegedly breached is the dispositive factor for deciding whether Stoltz's claim is for tort or contract. "If the cause of complaint be for an act of omission or nonfeasance, which, without proof of a contract to do what has been left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract, and not upon tort.'" *Taylor v. Herbold*, 483 P.2d 664, 669 (Idaho 1971) (quoting *Atl. & P. Ry. Co. v. Laird*, 164 U.S. 393 (1896)). However, "[i]f the relation of the plaintiff and the defendants is such that a duty to take due care arises therefrom irrespective of contract and the defendant is negligent, then the action is one of tort." *Id.*

The Idaho Supreme Court applied these rules in *Sumpter v. Holland Realty, Inc.* and held that the district court correctly applied the four-year statute of limitations for negligence actions unrelated to personal injuries, rather than the statute of limitations for contracts, to the plaintiffs' claim. 93 P.3d 680, 685 (Idaho 2004). The plaintiffs in *Sumpter* contracted with the defendants for representation in the purchase of a lot and the construction of a home on it. *Id.* at 681. The contract required the defendants to abide by certain enumerated duties. *Id.* at 684. A statute independently imposed those same duties on the defendants. *Id.* The court held that the plaintiffs had to deal with the breaches of these duties "in tort, not contract," because their cause of action could have

been "maintained without the contract by virtue of a statutory or common law duty." *Id.* at 685.

*Sumpter* shows that Stoltz does not have a contract claim. Fry Foods had a duty to use ordinary care for the safety of Stoltz. Fry Foods owed this duty as a landowner to its invitee and as a landowner who employed a contractor to do work on its property. *See Walton v. Potlatch Corp.*, 781 P.2d 229, 235 & n.2 (Idaho 1989) (describing the two duties); *Harrison v. Taylor*, 768 P.2d 1321, 595-96 (Idaho 1989) (abolishing the open and obvious danger doctrine in favor of ordinary-care and comparative-fault standards in premises liability negligence actions). The contractual provision Stoltz alleges Fry Foods violated mirrors these common law duties. Therefore, Stoltz's claims are properly analyzed as torts, subject to the two-year statute of limitations for personal injury actions.

### B. Idaho's tolling law applies.

Stoltz argues that Oregon's "savings" statute, Or. Rev. Stat. §12.220 (hereinafter § 12.220), should apply to this case to extend the filing deadline by 180 days.[3] Fry Foods

---

[3] The relevant provisions of § 12.220 are:

(1) Notwithstanding ORS 12.020, if an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action, or is involuntarily dismissed with prejudice on the ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020 and the statute of limitations for the action expired, the plaintiff may commence a new action based on the same claim or claims

(Continued)

argues the Idaho's tolling law, which does not contain a similar savings statute, applies. Federal courts sitting in diversity apply the choice-of-law provisions of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). Idaho applies the "most significant relationship" test set out in the Restatement (Second) of Conflict of Laws to determine which state's laws govern tort cases. Section 145 of the Restatement requires courts to consider: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Grover v. Isom*, 53 P.3d 821, 824 (Idaho 2002). "'Of these contacts, the most important in guiding [the Idaho Supreme Court's] past decisions in tort cases has been the place where the injury occurred.'" *Id.* (quoting *Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82, 85 (Idaho 1995)).

---

> against a defendant in the original action if the defendant had actual notice of the filing of the original action not later than 60 days after the action was filed.
>
> (2) If, pursuant to subsection (1) of this section, a new action is commenced in the manner provided by ORS 12.020 not later than 180 days after the judgment dismissing the original action is entered in the register of the court, the new action is not subject to dismissal by reason of not having been commenced within the time allowed by statute.

Once the Court analyzes the § 145 factors, "they are evaluated in light of the following policy concerns [set out in § 6 of the Restatement]": (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) the ease in the determination and application of the law to be applied. *Grover*, 889 P.2d at 85. These considerations are not designed to be applied in a mechanical way. Rather, the conflict must be rationally evaluated in light of the policies underlying the conflicting rules of law. *See Johnson v. Pischke*, 700 P.2d 19, 22 (Idaho 1985).

Application of the § 145 factors strongly favors Idaho law. Stoltz is an Idaho resident. He is suing to recover on injuries he received as a result of Fry Foods alleged negligence at its Weiser, Idaho plant. That Fry Foods and DLB Construction are out of state entities does not change the fact that the focus of their relationship was a contract for repairs at Fry Foods' Weiser plant. Thus, Idaho has the most and strongest contacts to this case.

Statutes of limitations "protect[] . . . defendants against stale claims, and protect[] . . . the courts against needless expenditure of resources." *Johnson*, 700 P.2d at 24. They "are designed to promote stability and avoid uncertainty with regards to future litigation." *Higginson v. Wadsworth*, 915 P.2d 1, 4 (Idaho 1996). Combined with the "closely

related question[] of tolling," these laws represent "the State's judgment on the proper balance between the policies of repose and the substantive polices of enforcement embodied in the state cause of action." *Wilson v. Garcia*, 471 U.S. 261, 269, 271 (1985), *superseded by statute on other grounds*, Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5086, 5114, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80 (2004). Stoltz does not contest that Idaho's negligence law governs his substantive claims. Given that, the balance Idaho struck between a tort victim's right to pursue relief and an alleged tortfeasor's expectations of finality should also apply. *See Grover*, 53 P.3d 824 ("As a general rule, a victim should recover under the system in place where the injury occurred."); *Johnson*, 700 P.2d at 25 ("Idaho, as the place of injury, has the most significant interest [in having its statute of limitations applied]."). Moreover, certainty, predictability, and uniformity are served by applying Idaho's statute of limitations and tolling law to torts committed in Idaho.

Stoltz argues that, having first brought his claims in good faith in Oregon, he has the reasonable expectation that Oregon's savings statute would apply in this case. As Fry Foods points out, Stoltz's position ignores the fact that he chose to appeal the dismissal of his Oregon suit to the Oregon Court of Appeals. This fact is important. Section 12.220(2) requires Stoltz to file his subsequent suit within 180 days of the time the Oregon trial court dismissed his complaint without prejudice. The filing of a notice of appeal does not stop the clock on the 180-day period. *See Belinskey v. Clooten*, 239 P.3d 251, 254-55 (Or. Ct. App. 2010). Furthermore, Oregon Rule of Civil Procedure 21

A(3) "requires dismissal [of an action] if there is another action pending between the same parties for the same cause." *Beetham v. Georgia-Pacific Corp.*, 743 P.2d 755, 756 (Or. Ct. App. 1987). This includes an appeal. *See id.* The interplay between these rules means that Stoltz could not refile his case in Oregon while his appeal is pending. By asking the Court to apply § 12.220 unilaterally, Stoltz is requesting more favorable treatment than he would receive in Oregon. This greatly diminishes the reasonableness of Stoltz's reliance on § 12.220.

Oregon anticipated that plaintiffs, like Stoltz, would sometimes lose the benefit of § 12.220. Prior to 2003, § 12.220 allowed a plaintiff to refile within one year of dismissal or "reversal on appeal." *Belinskey*, 239 P.3d at 253 (quoting former § 12.220 (2001)) (emphasis omitted). By removing the language concerning appeals from the statute, the Oregon legislature intended to force plaintiffs "to make the risky choice between an appeal and refiling." *Id.* at 254. Surely, Oregon would not claim an interest in allowing plaintiffs to avoid this conundrum outside its borders when they could not do so within them. For these reasons, the Court concludes that Idaho's tolling laws govern this case.

      **C.     Idaho does not recognize equitable tolling.**

In the event that Idaho law applies, Stoltz asks the Court to equitably toll the statute of limitations. "'Statutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute.'" *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007) (quoting *Indep. Sch. Dist. of Boise City v. Callister*, 539

P.2d 987, 991 (Idaho 1975)).  The force of this pronouncement has led this Court to conclude on several prior occasions that Idaho does not recognize the doctrine of equitable tolling.  *See, e.g.*, *Feltmann v. Petco Animal Supplies, Inc.*, no. 2:11-cv-414-ELJ-MHW, 2012 WL 1189913, at *3 (D. Idaho March 20, 2012); *Roberts v. United States*, no. cv-09-194-S-BLW, 2009 WL 4634133, at *1 (D. Idaho Dec. 1, 2009).

There is a possible exception to the general rule that equitable tolling is unavailable in Idaho.  In *Lemhi County v. Boise Live Stock Loan Co.*, 278 P. 214, 217 (Idaho 1929), the Idaho Supreme Court stated that "the pendency of [a previously-filed] proceeding[] shall have the effect to toll the statutes of limitations upon a cause of action, [if] the proceedings . . . prevent enforcement of the remedy by action."  Put more plainly, the statute of limitations is tolled "[w]here a person is prevented from exercising his legal remedy by the pendency of legal proceedings."  *Lindholm v. Heithecker*, 213 P. 671, 672 (Kan. 1923) (quoted in *Lemhi County*).  Assuming without deciding *Lemhi County* remains good law, *Feltmann*, 2012 WL 1189913, at *3, Stoltz still cannot rely on its exception.  Stoltz's Oregon suit did not prevent him from seeking relief in this Court or Idaho state court.

Stoltz disagrees, arguing that claim preclusion would come into effect if his Oregon suit continued on.  Perhaps, but that eventuality is irrelevant.  "The date of judgment, not the date of filing, controls the application of res judicata principles."  *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993) (internal quotation marks omitted); 18 Wright, et al., *Fed. Prac. & Proc.* § 4404 (2d ed.).  Because there has not been a

judgment on the merits entered in the Oregon suit, it was never a barrier to Stoltz filing suit in Idaho.

## CONCLUSION

Stoltz was injured on November 14, 2011. Under I.C. § 5-219(4), Stoltz had to file his tort claims against Fry Foods on or before November 15, 2013. He commenced this suit on April 8, 2014, approximately five months after the statute of limitations expired. Because Stoltz has not identified an Idaho statute that would toll the running of the statute of limitations in this case, the Court will dismiss Stoltz's complaint as untimely filed.

## ORDER

**IT IS ORDERED THAT:**

1. Plaintiff's Motion to Stay (Dkt. 12) is **DENIED**.

2. Defendant's Motion to Dismiss (Dkt. 6) is **GRANTED**, and this suit is hereby **DISMISSED** with prejudice.

3. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: October 13, 2014



_____
B. Lynn Winmill
Chief Judge
United States District Court